UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 3:00CV161-P-D |
| ) | |
| MITCHELL SCRUGGS, *et al.* ) | |
| ) | |
| Defendants. ) | |

**MONSANTO COMPANY'S OPPOSITION TO THE
SCRUGGS DEFENDANTS' MOTION TO RECONSIDER
ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Four months after this Court denied Defendants' earlier motion to reconsider based on *Quanta Computer, Inc. v. LG Electronics, Inc.,* ___ U.S.___, 128 S.Ct. 2109 (2008) ("*Quanta*") and two months after the United States Court of Appeals for the Federal Circuit denied Defendants' Petition for Leave to Appeal this Court's decision on that motion, Defendants ***once again*** seek reconsideration of this Court's July 6, 2004 Order denying Defendants' original Motion for Summary Judgment.  This time around, Defendants are left to suggest that the Federal Circuit and this Court got it wrong, and that this Court should use this opportunity to "deepen its understanding of [the] exhaustion doctrine in the context of the facts of this case…." Doc. 750, p. 4.  Even more brazen than suggesting that the Federal Circuit and this Court have a "shallow" understanding of the law and the facts of this case, Defendants incredibly contend that the earlier, well-reasoned holdings of the Federal Circuit and this Court were "objectively absurd."  Doc. 750, p. 23.

Defendants' latest Motion should be denied for three reasons.  First, because there has been no change in the controlling law and this Court's prior decision was not clearly erroneous,

further consideration of this issue is foreclosed pursuant to the law of the case doctrine. *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006). Second, this Court is bound by the mandate of the Federal Circuit set forth in *Monsanto Company v. Scruggs,* 459 F.3d 1328 (Fed. Cir. 2006). *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 1980); *Illinois Central Gulf RR. Co. v. International Paper Co.*, 889 F.2d 536 (5th Cir. 1989). Finally, as this Court and the Federal Circuit have held on multiple occasions, the "first sale" doctrine of patent exhaustion "is not implicated [in this case], as the new seeds grown from the original batch had never been sold." *Id.* at 1336, *quoting Monsanto v. McFarling,* 302 F.3d 1291, 1299 (Fed. Cir. 2002).[1] *Quanta* affirms that a patented article must be sold for the exhaustion doctrine to apply, *Quanta,* 128 S.Ct. at 2115, and it in no way addresses the Federal Circuit's repeated holding that second-generation seed are patented articles which have never been sold. Quite simply, as this Court previously held, *Quanta* does not raise any issue regarding second-generation seed, because those seeds are not subject to the first-sale/patent exhaustion doctrine.

## Procedural History of Defendants' Repeated Failed Efforts to Reverse this Court's Order Granting Summary Judgment for Monsanto and Against Defendants

This is not the first time Defendants have requested this Court to revisit it prior orders granting Monsanto's motions for summary judgment.[2] Monsanto will not rehash the specific details of those efforts, but a brief timeline of Defendants' repetitive efforts puts into context why Defendants' current motion must be denied on its face – whether by application of the law of the case doctrine or the mandate rule:

---

[1] As noted more fully below, in their original motion for summary judgment, their appeal to the Federal Circuit, their subsequent Petition for Leave to Appeal, and their earlier motion for reconsideration, Defendants made the same argument concerning the applicability and scope of the patent exhaustion doctrine they are making here – that Defendants purchased the seed containing Monsanto's patented biotechnology in an unrestricted sale and, therefore, were entitled to use that seed in an unencumbered fashion. *Scruggs,* 459 F.3d at 1335. This argument has an unblemished record of being rejected.

[2] The citations for this Court's published opinions are: 1) *Monsanto Company v. Scruggs,* 342 F.Supp.2d 584 (N.D. Miss. 2004) (patent infringement and invalidity); 2) *Monsanto Company v. Scruggs,* 342 F.Supp.2d 568 (N.D.Miss. 2004) (antitrust and patent misuse claims); and 3) *Monsanto Company v. Scruggs*, 342 F.Supp.2d 602 (N.D.Miss. 2004).

2

- June/July 2004:     This Court grants each of Monsanto's motions for summary judgment.

- July 2004:     Defendants filed motions to reconsider this Court's orders granting each of Monsanto's motions for summary judgment.

- November 2004:     This Court denied Defendants' motions to reconsider.

- December 2004:     Defendants filed Notice of Appeal from this Court's orders granting Monsanto's motions for summary judgment to the Federal Circuit ("First Appeal").  Included in Defendants' First Appeal was the argument that this Court erred when it held that the patent exhaustion / first sale doctrine was inapplicable to the facts of this case.

- August 2006:     Federal Circuit affirmed this Court's orders granting Monsanto's motions for summary judgment.  In its ruling, the Federal Circuit reaffirmed the principle established in *McFarling* that the first sale / patent exhaustion doctrine is inapplicable because, *inter alia,* the second generation seeds were never sold.

- September 2006:     Defendants filed a petition for rehearing or rehearing *en banc* with the Federal Circuit.

- December 2006:     Federal Circuit denied Defendants' petition and issued its Final Judgment and Mandate affirming this Court's orders granting Monsanto's motions for summary judgment.

- March 2007:     Defendants filed Petition for Writ of Certiorari to the United States Supreme Court.

- April 2007:     United States Supreme Court denied Defendants' petition.

- June 9, 2008:     Supreme Court issued its opinion in *Quanta Computer, Inc. v. LG Electronics, Inc.*

- June 26, 2008:     Defendants filed *first* motion to reconsider this Court's previously-upheld orders granting Monsanto's motions for summary based principally on holdings of the *Quanta* opinion.  Defendants argued that, based upon their interpretation of *Quanta,* Monsanto's patent rights were exhausted as to all of the infringing seed used by Defendants during every year at issue in this case.

3

- March 2009:     This Court denied Defendants' first motion to reconsider. Defendants filed a petition for permission to appeal this order to the Federal Circuit.

- May 2009:       Federal Circuit denied Defendants' petition.

- July 2009:      Defendants filed the present (and *second*) motion to reconsider this Court's orders granting Monsanto's motions for summary judgment based upon *exactly* the same arguments previously raised and rejected by this Court.[3]

## Argument

**I. Relevant Facts and Holding in *Quanta*.**

*Quanta* involved three patents held by LGE Electronics, Inc. ("LGE") regarding certain computer technologies. *Quanta Computer, Inc. v. LG Electronics, Inc.*,___ U.S.___, 128 S.Ct. 2109, 2113 (2008). LGE licensed these patents to Intel Corporation ("Intel") under a broad license which permitted Intel to "make, use, sell (directly or indirectly), offer to sell, import, or otherwise dispose of" Intel products which practice and incorporate the LGE patented technology. *Id.* at 2114. This license also provided that no license is granted to a third party for the combination by that third party of the licensed technology with technologies from sources other than Intel or LGE. *Id.*

Intel sold to a group of computer manufacturers, including Quanta Computer ("Quanta"), certain microprocessors and chipsets containing the patented technology. *Id.* Subsequent to this initial sale, Quanta manufactured computers using not only the Intel microprocessors and chipsets that were previously sold to Quanta, but also combined this technology with non-Intel parts. *Id.* Based upon LGE's license agreement with Intel, LGE brought an infringement action

---

[3] Defendants' repeated, failed attempts to convince this Court to reverse its prior grant of summary judgment must come to an end at some point. Monsanto respectfully requests this Court to put an end to the continued "agitation of settled issues" in this case and deny Defendants' latest motion. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 816 (1988), *quoting* 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984). Undoubtedly, Defendants' repeated efforts are far from the "just, speedy and inexpensive" determination of justice contemplated by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 1. Or, alternatively, Defendants' Motion should be denied by application of the "enough is enough" doctrine. Monsanto, however, could not locate relevant case authorities for this proposition.

against Quanta, asserting that the combination of Intel and non-Intel parts infringed the LGE patents. *Id.* The district court found that, based upon the broad license agreement involved between LGE and Intel, the ***authorized*** sale of the microprocessor chips and chipsets from Intel to Quanta exhausted LGE's patent rights in those articles. *Id.*

On appeal, the Federal Circuit concluded that patent exhaustion did not apply because LGE did not license Intel to sell microprocessor chips and chipsets to Quanta for use in combination with non-Intel products. *LG Electronics v. Bizcom Electronics, Inc.,* 453 F.3d 1364, 1370 (Fed. Cir. 2006). On *certiorari*, the Supreme Court held that Intel's sale of microprocessor chipsets to Quanta exhausted LGE's rights in those chipsets because there was an "authorized sale" of those articles by Intel to Quanta. *Id.* at 2122.

## II. Defendants' Latest Motion to Reconsider Fails Under the Doctrine of Law of the Case.

Under the law of the case doctrine, issues of law or fact previously decided may not be reexamined by the district court. *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 2006); *Free v. Abbott Laboratories, Inc.*, 164 F.3d 270, 272 (5th Cir. 1999). Defendants assert that the exception to the law of the case doctrine for "a change in controlling law on the applicable issues," is applicable in the instant case in light of the Supreme Court's recent decision in *Quanta*. However, Defendants have already sought this reconsideration of this Court's original Summary Judgment Order based on *Quanta*. *See* Doc 678. In its March 3, 2009 Order, this Court held:

> Furthermore, the *Quanta* decision in no way undermines the basis for the Federal Circuit's holding on the issue of patent exhaustion. The Federal Circuit expressly noted:
>
> > The doctrine of patent exhaustion is inapplicable in this case. There was no unrestricted sale because the use of the seeds by seed growers was conditioned on obtaining a license from Monsanto. Furthermore, the "'first sale' doctrine of exhaustion of the patent right is not implicated,

5

> as the new seeds grown from the original batch had never been sold." *Monsanto v. McFarling*, 302 F.3d 1291, 1299 (Fed.Cir.2002). Without the actual sale of the second generation seed to Scruggs, there can be no patent exhaustion. The fact that a patented technology can replicate itself does not give a purchaser the right to use replicated copies of the technology. Applying the first sale doctrine to subsequent generations of self-replicating technology would eviscerate the rights of the patent holder. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336 (Fed.Cir.2006).
>
> Based on the foregoing, the Court concludes that the defendant's Motion to Reconsider is not well-taken and should be denied.

[Doc. 731, p. 2]. As this Court correctly noted, because this issue has conclusively been determined on appeal, Defendants' current (and nearly identical) motion must be denied.

Defendants cite the recent opinion of the Federal Circuit in *Transcore v. ETC Corp.*, 563 F.3d 1271 (Fed.Cir. 2009) in support of its argument that there has been a change in the controlling law so as to warrant reconsideration at this Court's prior order. However, the *Transcore* decision is inapplicable to this case. *Transcore* was an action brought by Transcore, LP against Electronic Transaction Consultants Corporation ("ETC") for infringement of several patents regarding the sale and installation of automated toll collection systems (such as the "EZ Pass" system on toll roads in some cities). The allegedly infringing systems were sold to ETC by a company named Mark IV. Previously, Mark IV had settled an infringement lawsuit with Transcore involving the systems. As part of the settlement agreement, Transcore provided a broad covenant not to sue Mark IV for future infringement. The issue in *Transcore* was whether subsequent sales by Mark IV under the specific covenant not to sue at issue were authorized and, therefore, exhausted Transcore's patent rights to pursue infringement claims against downstream purchasers such as ETC. The Federal Circuit, citing *Quanta* and other decisions, held that these sales were authorized under the settlement agreement/covenant not to sue and, therefore, Transcore's patent rights were exhausted in those articles sold.

The opinion does not address, expressly or impliedly, the issue before this Court, i.e. that Monsanto's patent rights cannot be exhausted because the specific articles at issue in this case (second and subsequent generations of seed containing Monsanto's patented biotechnology) were *never sold in the first instance*. Because *Transcore* is inapplicable to this case (and merely restates the inapposite principle of law set forth in *Quanta*), it does not constitute a change in controlling law.

Aside from the inapplicable *Transcore* opinion, the only other "new" authorities cited by Defendants are two district court opinions – which even Defendants do not claim are "controlling," even if they were relevant – and several legal publications and law review articles to which Defendants interpret as authority "contrary" to this Court's prior Order. These "authorities," however, are entirely immaterial to the present dispute.

Both district court cases cited by Defendants involved allegedly infringing articles which, unlike the case here, were the *very articles that were sold in the first instance. See LG Electronics v. Hitachi, LTD*, 2009 WL 667232 (N.D.Cal. 2009) (merely holding that *Quanta's* holdings should extend to foreign sales, but the necessity of an actual sale is still required: "….*Quanta's* holding – that exhaustion is triggered **by the authorized sale** of an article…."); *Static Control Components, Inc. v. Lexmark International, Inc.*, 615 F.Supp.2d 575 (E.D.Ky. 2009) (involving a dispute where the patentee *sold* the allegedly infringing articles to the licensee). In fact, the district court in *Lexmark* specifically distinguished this Court's March 3 Order on its facts because unlike the toner cartridges at issue in the *Lexmark* case, this case involves the infringement of second generation seed *that had never been sold. Id.* at 588. The *Lexmark* decision never states – expressly or impliedly – that this Court's March 3 Order was not a "principled reading" of *Quanta* as Defendants claim. Doc. 750, p. 9, n. 17.

The legal periodicals and law review journals cited by Defendants – while interesting reading – are entirely immaterial, but nonetheless equivocal on *Quanta's* impact on this case (and in several instances consistent with the proposition of law espoused by the Federal Circuit and this Court).[4]  *See, e.g.* Wegner, POST-QUANTA, POST-SALE PATENTEE CONTROLS, 7 J. Marshall Rev. Intell. Prop. L. 681, 695 (2008) (noting that *Quanta* gives "scant" guidance on issues involving modern biotechnology, such as those involved in the present case); SEED EXHAUSTION: QUANTA'S EFFECT ON BIOTECH PATENTS, IP Law 360 (July 7, 2008) (noting that a "better argument" for the non-applicability of the exhaustion doctrine to self-replicating seed is that the "progeny seeds are not the articles that were first sold."); Kieff, QUANTA V. LG ELECTRONICS: FRUSTRATING PATENT DEALS BY TAKING CONTRACTING OPTIONS OFF THE TABLE?, 2008 Cato Sup.Ct.Rev. 315 (2007-08) (article does not address self-replicating technology at all); Beard, THE LIMITS OF LICENSING: QUANTA V. LGE AND THE NEW DOCTRINE OF SIMULTANEOUS EXHAUSTION, 2008 UCLA J.L. & Tech. 3, 35-40 (2008) (merely discussing the author's perceived uncertainty left in the wake of *Quanta* as it applies to the biotechnology industry).

### III.  Defendants' Latest Request for Reconsideration Should Be Denied Pursuant to the Mandate Rule.

Defendants' Motion should also be denied on the well-settled grounds that the mandate rule forecloses further consideration of this issue by this Court.  The mandate rule holds that "issues actually decided [on appeal] – those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court – are foreclosed from further consideration."  *Amado v. Microsoft Corp.,* 517 F.3d 1353, 1360 (Fed. Cir. 2008), *quoting Engel Indus., Inc. v. Lockformer Co.,* 166 F.3d 1379, 1383 (Fed. Cir. 1999).

---

[4]  Defendants do not suggest that these legal periodicals and law review articles – such as the one written by a law student fresh off his first year at the University of North Carolina – is controlling authority on this Court.

Similar to its argument regarding the law of the case doctrine, Defendants assert that the exception to the mandate rule for "a change in controlling law on the applicable issues," is applicable in the instant case in light of the Supreme Court's recent decision in *Quanta*. *Quanta* does not address (much less change the law regarding) the Federal Circuit's basis for holding that Defendants' patent exhaustion defense fails. As demonstrated below, *Quanta* in no way changes the controlling law – *Monsanto v. Scruggs,* 459 F.3d at 1336, and *Monsanto v. McFarling*, 302 F.2d at 1299 – and, therefore, Defendants' latest motion for reconsideration must be denied.[5]

### IV. *Quanta* Does Not Impact the Federal Circuit's Holding that Second-Generation Seed Has Never Been Sold.

Defendants erroneously contend that *Quanta* vitiates the Federal Circuit's 2006 decision in this case. In their latest Motion, Defendants urge this Court to ignore the well-reasoned prior decisions of this Court and the Federal Circuit. However, Defendants simply fail to apprehend that the *Quanta* decision does not address the established principle that the patent exhaustion doctrine does not apply to restrictions placed on second generation seed *that was never sold in the first instance*, which was the basis for this Court's ruling on Defendants' earlier Motion to Reconsider as well as the Federal Circuit's decisions in *Scruggs* and *McFarling*.

Where, as here, subsequent generations of seed containing Monsanto's patented technology are produced from the original seed (*i.e.*, the articles that were "sold"), the patent

---

[5] Monsanto will not respond in great detail to Defendants' peculiar argument comparing their rights in patented second generation seed to the offspring of cattle. Doc. 750, p. 19. However, because the doctrine of patent exhaustion is inapplicable, Defendants' purported state law rights would be preempted. Federal patent laws, "like other laws of the United States enacted pursuant to constitutional authority, are *the supreme law of the land. . . .*When state law touches upon the area of these federal statutes, it is 'familiar doctrine' that the federal policy 'may not be set at naught, or its benefits denied' by the state law. . . . This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964) (emphasis added) (citing *Sperry v. Florida*, 373 U.S. 379 (1963); *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173 (1942)); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) (holding that state unfair competition law cannot be applied when it conflicts with federal patent law).

exhaustion doctrine does not apply to those subsequent generations of seed, which have never been sold. *Scruggs*, 459 F.3d at 1336; *McFarling,* 302 F.3d at 1299.[6] Instead, when the patented traits appear in the second generation of seed that is produced, it is "made" anew, it has never been sold, and it comes into being fully subject to the patentee's rights under Title 35. *See id.; see also American Cotton-*Tie Co. v. Simmons, 106 U.S. 89, 93-94 (1882) (after patented item was destroyed in the course of use, using its parts to reconstruct the item anew infringed the patent).

The Federal Circuit specifically applied this reasoning in several cases, ***including this case***, and these rulings remain unaffected by the Supreme Court's decision in *Quanta.* Specifically, these Federal Circuit cases clearly hold that where there is no "sale" – such as in the case of second generation seed containing Monsanto's patented biotechnology, the patent exhaustion doctrine does not apply: "***[w]ithout the actual sale of the second generation seed to Scruggs, there can be no patent exhaustion.***"). *Scruggs,* 459 F.3d at 1336 (emphasis added); *see also McFarling,* 302 F.3d at 1298-1299 ("[S]ince the new seeds were not sold by the patentee they entailed no principle of patent exhaustion."); *Monsanto Co. v. McFarling,* 363 F.3d 1336, 1343 (Fed. Cir. 2004) (because patents on soybeans "read on all generations of soybeans produced … prohibiting the replanting of the second generation of [patented] soybeans" does not extend a patentee's statutory rights).

Even the Petitioners in *Quanta* themselves recognized that issues regarding use restrictions on the second generation of self-replicating technology simply had no bearing on the issues before the *Quanta* Court:

---

[6] In fact, as discussed below, there was never an "authorized sale" of the first generation seed to Defendants. However, as patent infringement has only been claimed as to Defendants' unauthorized use of second (and later) generation seeds in this case, the Court need not reach the issue of whether there was an "authorized sale" of the first-generation seed.

10

> For similar reasons the special issues raised by self-replicating seeds and software are irrelevant here. Restrictions can always be placed on the use or sale of a new second generation of the sold good. But Quanta does not create a new second generation of microprocessors; it just wants to use the physical articles it purchased for their only reasonable use.

Reply Brief for Petitioners, 2007 WL 4613423, *2-3 (U.S.). [7]

Quite simply, there is nothing in the Supreme Court's *Quanta* decision which affects this Court's – or the Federal Circuit's – earlier rulings regarding Defendants' willful infringement by knowingly planting second, third, fourth, and fifth generations of seed containing Monsanto's patented technology. Defendants' Motion must be denied.[8]

## Conclusion

Nothing in the *Quanta* decision impacts any ruling of this Court – or the Federal Circuit – in the nearly eight year existence of this case. Monsanto respectfully requests that this Court deny Defendants' latest attempt to revisit this settled matter of law, award Monsanto its

---

[7] Notably, a Petition for Writ of Certiorari to the United States Supreme Court was filed in *McFarling III*. One of the questions presented to the Supreme Court was "[d]o the doctrines of patent exhaustion and patent misuse permit the purchaser of a patented good to use that good and dispose of its products as it sees fit, absent a valid contract?" Exh. 1. In fact, the *McFarling III* Petition specifically referenced the *Quanta* case to the Supreme Court by arguing that if the Supreme Court granted *certiorari* in *Quanta*, it should equally grant *certiorari* in *McFarling*. Exh. 1, p. 29. On January 7, 2008, the Supreme Court denied the *McFarling* Petition. *See McFarling*, 128 S.Ct. 871. At that time, *Quanta* had been fully briefed to the Supreme Court, including the submission of over thirty (30) third party *amici* briefs. Exh. 2. Had the controlling principle of law been the same in *McFarling III* and *Quanta*, McFarling's Petition constituted a perfect opportunity for the Court to have extended its upcoming holding in *Quanta* to articles that were never sold, such as second generations of self-replicating technology. It elected not to do so.

[8] Even if *Quanta* could be construed to limit Monsanto's ability to restrict the use of subsequent generations of Monsanto's patented technology in seed that was never sold, the *Quanta* opinion is still inapplicable to facts here because the provisions of the licensing agreement between Monsanto and its seed partners expressly limit the seed partners' right to make, sell, and/or transfer seed containing the patented technology. *See* EV 45-79 attached to Supplemental Volume of Materials filed by Defendants on 7/8/08, Monsanto / Asgrow Seed Company License § 3.2(a) and EV 29-41 attached to Supplemental Volume of Materials filed by Defendants on 7/8/08, Monsanto / Delta and Pine Land Company License § 3.2(a). Section 3.2 of these licenses authorizes seed partners to sell seed containing the patented technology only to licensed growers for use in a single season. In contrast, the LGE-Intel agreement specifically states that "[n]othing in the License Agreement restricts Intel's right to sell its microprocessors and chipsets to purchasers who intend to combine them with non-Intel parts." *Quanta,* 128 S.Ct. at 2121. Consequently, Monsanto's licenses are analogous to the license granted by the patent holder in *General Talking Pictures* that limited the licensee to selling the amplifiers for "private and home use" as opposed to "commercial use." *Quanta* confirmed that the holding in *General Talking Pictures* was correct. *See Quanta,* 128 S.Ct. at 2121-2122. Under *General Talking Pictures* and *Quanta*, the patent exhaustion doctrine does not apply to Defendants, who were never party to an "authorized sale," since the purported sales to Defendants were not on terms authorized by Monsanto.

attorneys' fees and costs in responding to Defendants' Motion, and for such further relief as this Court deems just and proper.

    Respectfully submitted,

    HUSCH BLACKWELL SANDERS LLP

    By:    */s/ Joseph C. Orlet*
    Joseph C. Orlet
    joseph.orlet@huschblackwell.com
    Erik L. Hansell
    erik.hansell@huschblackwell.com
    190 Carondelet Plaza, Suite 600
    St. Louis, MO  63105-3441
    (314) 480-1500
    (314) 480-1505 (fax)

    AND

    HOLCOMB DUNBAR
    Michael N. Watts
    mwatts@holcombdunbar.com
    R. Bradley Best
    bradbest@holcombdunbar.com
    1217 Jackson Avenue
    Post Office Drawer 707
    Oxford, MS  38655-0707
    (662) 234-8775
    (662) 238-7552 (fax)

    AND

    LAKE TINDALL, LLP
    Frank S. Thackston, Jr.
    fthackston@ltindall.com
    127 South Poplar
    Post Office Box 918
    Greenville, MS   38702-0918
    (662) 378-2121
    (662) 378-2183 (fax)

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 14th, 2009, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

James L. Robertson, Esq.
jlr@wisecarter.com
Paul Eldridge Barnes, Esq.
peb@wisecarter.com
WISE, CARTER, CHILD & CARAWAY
600 Heritage Building
401 East Capitol Street
Jackson, MS  39205-0651

Jim D. Waide, III, Esq.
waide@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
P.O. Box 1357
Tupelo, MS  38802

Lisa Scruggs Rohman, Esq.
lisarohman@yahoo.com
112 South Broadway
Tupelo, MS  38804

Steven C. Cookston, Esq.
steven@uwbbr.com
UPSHAW, WILLIAMS, BIGGERS,
 BECKHAM & RIDDICK LLP
309 Fulton Street
Greenwood, MS  38930

David F. Maron, Esq.
dmaron@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, MS  39211

Charles Victor McTeer
cvmcteer@mcteerlaw.com

            */s/ Joseph C. Orlet*