UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MONSANTO COMPANY                                                                    PLAINTIFF

V.                                                         CIVIL ACTION NUMBER: 3:00CV-161-P-D

MITCHELL SCRUGGS, ET AL.                                                        DEFENDANTS

## SCRUGGS DEFENDANTS' REBUTTAL MEMORANDUM BRIEF

**I. Monsanto No Longer Seriously Questions That Scruggs' 1996 And 1998 Unencumbered Purchases Of Original Batches Exhausted Monsanto's Patent Monopoly**

We're more than halfway home.  With useful timing, the former Deputy Solicitor General who handled the Government's *Amicus Curiae* side of *Quanta Computer, Inc. v. LG Electronics, Ind.*, 553 U.S. __, 128 S. Ct. 2109 (2008) has verified we have ***not*** been reading *Quanta* "too broadly."  Thomas G. Hungar, [1] *Observations Regarding The Supreme Court's Decision in Quanta Computer, Inc. v. LG Electronics, Inc.*, 49 IDEA - The Intellectual Property Law Review 517 (2009) [hereafter "*Quanta Obs.*, 49 IDEA at ___"], a copy of which is attached as Appendix A.

And so it is no surprise that only in cryptic footnote 8 does Monsanto mention Scruggs' meticulous exposition[2] that his original 1996 and 1998 seed purchases were "authorized sales"

---

[1] Former Deputy Solicitor General Hungar was primarily responsible for preparing two briefs filed on behalf of the United States, first, supporting the grant of certiorari to consider the problems with the Federal Circuit's view of patent exhaustion exemplified in *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1377 (Fed. Cir. 2006), and, second, on the merits.  Mr. Hungar also presented oral argument before the Supreme Court in *Quanta*.  Mr. Hungar's article "assess[es] the scope and import of the Court's *Quanta* decision through the lens of the briefs filed by the Solicitor General."  *Quanta Obs.*, 49 IDEA at 520.

[2] See Scruggs Defendants' Memorandum Brief In Support Of Motion To Reconsider Order Denying Summary Judgment [Doc 750], filed July 2, 2009 [hereinafter "Scruggs Brief [750], at ___"], Part IV., A., at 14-19.

exhausting Monsanto's patents. In type almost too small to read,[3] footnote 8 never tries to avoid the devastating legal effects of Monsanto's disavowal of power to make Asgrow and D&PL extract "one commercial crop" contracts from farmers downstream.[4] Even if Monsanto had *not* tied its hands by the eviscerating § 3.9(f) in its Asgrow license, or § 3.10 in its two D&PL licenses, its "remedies would arise solely under contract law." *Quanta Obs.*, 49 IDEA at 539. "[B]reach of the [Asgrow and D&PL] license agreement[s] would give rise only to state-law remedies[[5]] and could not be remedied by means of a patent infringement suit."[6] *Id.*

## II. Scruggs' Unencumbered Title To The 1996 And 1998 Original Batches Includes Second And Subsequent Generation Seeds

Monsanto now puts all its eggs in the basket of the Federal Circuit's second generation seed patent exhaustion end run, emanating from *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1336

---

[3] See Monsanto Company's Opposition To The Scruggs' Defendants Motion To Reconsider Order Denying Motion For Summary Judgment [Doc 754], filed August 14, 2009 [hereinafter "Monsanto's Opposition, at ___"], at page 11, footnote 8.

[4] Monsanto only required that "ASGROW shall make all reasonable efforts to have each of its dealers and distributors comply with such agreements." Asgrow License Agreement, § 3.9(a), EV52, though failure in such "reasonable efforts" "shall not be considered a breach of this Agreement by ASGROW unless ASGROW encourages its dealers or distributors to breach such obligations." *Id.*, § 3.9(f), EV53. If anything, Monsanto had fewer rights *vis-a-vis* D&PL than in the Asgrow License Agreement. MTC/D&M/D&PL, INSECT-PROTECTED COTTON LICENSE, § 3.10, EV41 ("shall not be considered a breach of this Agreement [by D&PL]"); also MTC/D&M/D&PL, ROUNDUP READY COTTON LICENSE, § 3.10, EV35. (same)

[5] Monsanto has never brought a breach of license case against Asgrow or D&PL on their respective licence agreements, though the breaches, if any, would have occurred in fact long before Monsanto acquired Asgrow and D&PL and reduced them to subsidiary status.

[6] Hungar's extensive discussion of *General Talking Pictures Corp. v. Western Electric. Co.*, 305 U. S. 124 (1938), *Quanta Obs.*, 49 IDEA at 535-41, leaves no doubt that and why it is distinguishable from this case in outcome determinative ways, and why Monsanto claims help from *GTP* only at the tail end of an impossible-to-read footnote. Doc 754, at 11, fn. 8.

(Fed. Cir. 2006) ("*Scruggs I*") with its origins and grounding in *Quanta*-defunct *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700 (Fed. Cir. 1992). This basket is empty as well. Scruggs Brief [750], at Part IV., B., at 19-27. As Monsanto remains in denial, a rebuttal is in order.

There is a perfectly sensible and legally compelling reason why the "seeds grown from the original batch" are free of Monsanto's patent monopoly. Long before he planted the first such seed, Scruggs owned those original batches, their replication capacities, and all of their component parts — the germplasm, genes, vectors, plasmids, cells, DNA constructs, and "chimeric transcriptional initiation region[s]" — ***outright and with an unencumbered title***. Scruggs owned those "second generation seeds" from first flowering and pollination within "the original batch," beginning with their "period of gestation," if you will. Exhaustion doctrine takes state title law as it finds that law. Indeed, exhaustion doctrine is a congressionally approved judicial reading of the Patent Act itself. Scruggs Brief [750], at Part IV., B., at 24-25.

Ownership of offspring is universally an incident of title to living organisms that are personal property. *Carruth v. Easterling*, 150 So.2d 852, 855 (Miss. 1963). This rule should not surprise Monsanto as it obtains on both sides of The River at St. Louis, *see, e.g., John Deere Plow Co. v. Gooch*, 91 S.W.2d 149, 156 (Mo. App. 1936) ("increase of the increase *ad infinitum* comes within such rule"); *O'Brien v. First Galesburg Nat. Bank*, 194 N.E.562, 563 (Ill. 1935) (same). On principle, the increase of replicating seeds are well within the rule.

An authorized sale gives rise to "the private individual property of the purchaser, and is no longer specially protected by the laws of the United States, but by the laws of the State in which it is situated." *Bloomer v. Millinger*, 68 U.S. 340, 351 (1863). Upon consummation of the 1996 and 1998 authorized sales of seeds embodying Monsanto's patented inventions, the title

that passed is what — and all — the law requires, that Scruggs thereupon owned the increase and yield of those original batches of seeds as well. Think of these as future interests — a familiar property law concept — fully vested in 1996 and 1998, respectively.

"[T]he patent-exhaustion doctrine delimits the substantive scope of the patent grant. . . , *Quanta Obs.*, 49 IDEA at 528. "Once the patent issues, it is strictly construed." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230 (1964); *U. S. v. Masonite Corp.*, 316 U.S. 265, 280 (1942). "[E]xplicit restrictions imposed [by Monsanto] on authorized purchasers are ineffective as a matter of patent law." *Quanta Obs.*, 49 IDEA at 528. Make no mistake, "passage of title automatically triggers exhaustion," *Id.*, 49 IDEA at 532, to such an extent that the sale "cannot somehow be transformed, *nunc pro tunc*, into an unauthorized sale at some later time if the purchaser subsequently violates the post-sale use restrictions." *Id.*, at 541.

### III. Nothing In The Supremacy Clause Precludes Enforcement Of Mississippi's Personal Property Law Increase Rule

"It is well settled that '[b]eyond the limited monopoly . . . granted, . . . patent[s] . . . are subject to the general law.'" *U. S. v. Singer Mfg. Co.*, 374 U.S. 174, 196 (1963). Nothing in the Patent Act overrides state title law's increase rule noted above. Monsanto cites no conflict with the Patent Act and state personal property law applicable here, for there is none. Exhaustion freed Scruggs "to the use . . . [his seed] so long as it [is] capable of use." *Quanta*, 128 S.Ct. at 2115. Those seeds and their progeny belonged to Scruggs outright, so that Scruggs enjoyed the "right to use and sell [as he pleased]." *U. S. v. Univis Lens*, 316 U.S. 241, 249 (1942).

The Federal Circuit assumed the "*fact* that a patented technology can replicate itself does not give a purchaser the right to use replicated copies of the technology," *Scruggs I*, 459 F.3d at

1336, but the *law* of personal property ***certainly does give the purchaser that right,*** provided the purchaser had title to the original batch. Monsanto admits the proviso, by its failure to sue for Scruggs' 1996 and 1998 uses. *Scruggs I's* legal error is its focus upon "second generation seeds," not the original batch which is the source of Scruggs' title to subsequent generation seeds. The living personal property increase rule vested title in later generation seeds, given the *Quanta*-authorized sales of the first seeds that made their way to Scruggs' farm.

The *Scruggs I* mistake, at 1336, quoted in Order [731], at 3, is traceable to the greater mistake of the now *Quanta*-overruled "conditional sale" view of exhaustion doctrine. *Quanta* has shorn Monsanto of any Patent Act basis for its mischievous "single use only" patent restriction, grounded in *Mallinckrodt*. *Quanta Obs.*, 49 IDEA at 531[7] ("*Mallinckrodt*'s actual holding – that a patent holder's authorized sale of its patented products does not necessarily result in exhaustion – is necessarily overturned by the *Quanta* Court's enunciation of the governing test for exhaustion.")

Yet, we are told "Applying the first sale doctrine to subsequent generations of self-replicating technology would eviscerate the rights of the patent holder," *Scruggs I*, 459 F.3d at 1336/Order [731], at 2. Whatever the logic of this assertion, nothing in the Patent Act supports it. Properly constrained statutory interpretation precludes resort to such a rhetorical argument.

---

[7] Former Deputy Solicitor General Hungar's full exposition of *Mallinckrodt's* demise appears in "*Quanta Obs.*, 49 IDEA at 527-33. There is a broad consensus that *Quanta* ends *Mallinckrodt's* reign of terror. *See, e.g.,* "*Quanta* eliminates the crucial lynchpin of *Mallinckrodt's* analysis," *Quanta Obs.*, 49 IDEA at 532. *See also, Static Control Components, Inc., v. Lexmark International, Inc.,* 2009 WL 891811 (E.D. Ky., March 31, 2009) ("*Quanta* overruled *Mallinckrodt sub silentio*" because "[t]he Supreme Court's broad statement of the law of patent exhaustion simply cannot be squared with the position that the *Quanta* holding is limited to its specific facts.")

Supremacy Clause preclusion may emanate only from some text found in the Patent Act. **Exhaustion doctrine takes state title law as it is found, and nothing in *Quanta* or *Univis Lens* or any other Supreme Court exhaustion case hints otherwise.**

Nor may it be shown in fact that "[a]pplying the first sale doctrine to subsequent generations of self-replicating technology would eviscerate the rights of *th[is]* patent holder." Within this Court's actual and judicial knowledge, Monsanto has taken full advantage of what became *Quanta* footnote 7 and holds "one commercial crop only" contracts constricting 99+% of all farmers using its patented herbicide tolerant and insect resistant technologies. Dismissing this case will hardly "eviscerate" Monsanto's control over its patented genetics.

Preemption precludes enforcement of state law only where violence to federal law or some federally created right is unavoidable. There must either be an *actual* conflict between state and federal law or a congressional purpose to occupy an entire field. *Altria Group Inc. v. Good*, 129 S.Ct. 538, 543 (U.S. 2008). This nuance of Supremacy Clause jurisprudence nails shut the *Scruggs I* escape hatch, given the Supreme Court's "pragmatic" approach to whether the Patent Act preempts a particular state law. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). We are not dealing here with state law that grants patent-like protection, but, rather, with state title laws. The Patent Act evinces no purpose of occupying the field of property law. *See Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (the Constitution protects rather than creates property interests; the existence of property interests is found in existing rules or understandings that stem from independent sources such as state law).

Nor is there any conflict between state title laws protecting Scruggs' rights to do as he pleases with the second generation seed and the Patent Act which protects Monsanto's limited rights to its genetically modified traits. *See, e.g., Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) (commercial agreements traditionally are the domain of state law and that "[s]tate law is not displaced merely because the contract relates to intellectual property which may or may not be patentable."); *Singer Mfg.*, 374 U.S. at 196.

Here, exhaustion is a settled dimension of the Patent Act itself. In Scruggs' Brief [750], Part IV., B., 4., at 24-25, we show that "exhaustion may only be seen as a congressionally accepted limitation on the patent monopoly and the patent holder's right to sue for infringement." *Id.* at 25. Hungar reinforces the substance of the point, as well as its statutory interpretation dimension. *Quanta Obs.*, 49 IDEA at 525, citing and quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U. S. 71, 85 (2006).

Scruggs Brief [750], B., at 19-27, provides a full filling for any interstices that remain.

### IV. Monsanto Misreads The Power Of The Post-March 3, 2009 New Authorities

There are indeed more authorities contrary to this Court's March 3 Order [731], to which Thomas Hungar's *Quanta Observations* must now be added. Suffice it to say the Monsanto's Opposition misreads the point and effect of these authorities.[8]

---

[8] Scruggs cites *Transcore, LP v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009) for its broad reading of *Quanta's* recognition that the *only* issue relevant to patent exhaustion is whether sales of patented items are **authorized**, not whether the patent holder and seller intend, expressly or impliedly, to place restrictions on use of the items. *Id.* at 1277. Here, as in *Transcore* and *Quanta*, Monsanto's "intent with respect to downstream customers is **of no moment** in a patent exhaustion analysis." *Id.* at 1275 (emphasis added).

Scruggs cites *LG Electronics, Inc. v. Hitachi, Ltd.*, 2009 WL 667232 (N.D. Calif. March 13, 2009) to illustrate the power of principle — or theory or reasoning — emanating from a case

## V. Conclusion

The present Motion is no more procedurally affected than was Scruggs' Motion [678] filed shortly after *Quanta*. Nothing Monsanto cites or argues lays a glove on the premise that the March 3 Order "may be revised at any time before . . . [final judgment]" within Fed. R. Civ. P. 54(b). *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own . . . in any circumstance . . . .").[9] *Quanta* strongly counsels that the Court should grant Scruggs' prior motion for summary judgment and dismiss Monsanto's Complaint in its entirety and with prejudice.

Respectfully submitted this the 11th day of September, 2009.

MITCHELL SCRUGGS; ET AL.

BY:   /s/ James L. Robertson
      JAMES L. ROBERTSON, MSB 5612

---

like *Quanta*. The dominant point of *Hitachi* is that this Court should no longer adhere to Federal Circuit case law now vitiated by a principled reading of *Quanta*. "District courts may not follow circuit court precedent where a subsequent Supreme Court decision has 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'" *Hitachi* at * 10. It is this sense in which *Quanta* has pulled the rug from under *Scruggs I*, and, in turn, this Court's Order [731] of March 3, 2009.

Scruggs cites *Static Control Components, Inc. v. Lexmark International, Inc.*, 2009 WL 891811 at * 9 (E.D. Ky. March 31, 2009) for its recognition that *Quanta* "*reasserted a broad understanding of patent exhaustion in the face of Federal Circuit case law that had narrowed the scope of the doctrine.*" *Static Control*, 2009 WL 891811 at * 6 (emphasis added). And, to counter the procedural obstacles Monsanto now asserts, Doc. 754, at 1-4, 4-5, 8-9, because, even after twenty summary judgment motions, almost as many motions for judgment, and a jury trial, the *Static Control* district court recognized that it could not ignore the impact of *Quanta*.

[9] At pages 4 - 6 of our Amended Memorandum Brief in Support of Motion to Reconsider Denial of Summary Judgment [678], we explained that this Court has the authority to reconsider its ruling on Scruggs' liability for patent infringement, even after review by the Federal Circuit Court of Appeals.

PAUL E. BARNES, MSB 99107
LINDA F. COOPER, MSB 102901
Post Office Box 651
Jackson, MS 39205
jlr@wisecarter.com
peb@wisecarter.com
lfc@wisecarter.com

OF COUNSEL:

James D. Waide, III, Esq.
WAIDE & ASSOCIATES, P. A.
Post Office Box 1357
Tupelo, MS 38802
Telephone: (662) 842-7324
waide@waidelaw.com

Dennis C. Sweet, III, Esq.
Sweet & Associates
Post Office Box 1178
Jackson, MS 39215
Telephone: (601) 965-8700
dennis.sweet@sweetandassociates.net

Prof. Gary Myers
1012 South Lamar Street
Oxford, MS 38655
Telephone: (662) 801-3152
myersgroup@yahoo.com

WISE CARTER CHILD & CARAWAY
Post Office Box 651
Jackson, MS 39205
Telephone: (601) 968-5500
Facsimile: (601) 968-5593

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I, James L. Robertson, one of the attorneys for the Defendants, Mitchell Scruggs, et al., have this date served a true, correct and exact copy of the foregoing, via ECF, upon the following persons:

    Michael N. Watts, Esq.
    Holcomb Dunbar, P.A.
    Post Office Drawer 707
    Oxford, MS   38655-0707
    mwatts@holcombdunbar.com

    Joseph C. Orlet, Esq.
    Erik L. Hansell, Esq.
    Husch Blackwell & Sanders, LLC
    190 Carondelet Plaza, Suite 600
    St. Louis, MO   63105-3441
    joseph.orlet@huschblackwell.com
    erik.hansell@huschblackwell.com

    Frank S. Thackston, Jr., Esq.
    Lake Tindall LLP
    Post Office Box 918
    Greenville, MS   38702-09181
    fthackston@ltindall.com

    Edward Blackmon, Jr., Esq.
    Blackmon & Blackmon, PLLC
    Post Office Drawer 105
    Canton, MS   39046
    edblackmon@blackmonlawfirm.com

This the 11th day of September, 2009.

                        /s/ James L. Robertson
                        JAMES L. ROBERTSON